# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20699

United States Court of Appeals
Fifth Circuit

**FILED**

August 18, 2017

Lyle W. Cayce
Clerk

JODIE KELLY,

   Plaintiff - Appellee

v.

SETH A. NICHAMOFF,

   Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, GRAVES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

This interlocutory appeal arises out of the district court's denial of Defendant-Appellant Seth Nichamoff's motion to dismiss based on his assertion of Texas's attorney immunity. Plaintiff-Appellee Jodie Kelly's complaint alleges that Nichamoff conspired with two other Defendants to defraud her into purchasing undervalued shares of Legacy Automation, Power & Design, Inc., a Texas company owned by one of the Defendants, Paul Rembach. Specifically, she alleges that Nichamoff helped to fraudulently manipulate Legacy's shares, falsely assured Kelly that she was purchasing shares sufficient to give her 50% ownership, withheld and concealed information that would have revealed the fraud, and falsely represented the

value of the shares.

Nichamoff moved to dismiss Kelly's claims against him, invoking attorney immunity under Texas law. He argued that he was entitled to immunity because he was Rembach's attorney during the transaction and the alleged conduct fell within the scope of his representation. The district court denied Nichamoff's motion to dismiss, concluding that Texas's attorney immunity was inapplicable because Nichamoff's representation of Rembach occurred during a business transaction (a stock transfer) and was unrelated to litigation or an otherwise adversarial context. Nichamoff appeals, arguing that the district court adopted an unduly narrow view of Texas's attorney immunity doctrine. We affirm the district court's judgment, but do so on alternative grounds.

## I

"[A] district court's order denying [a] defendant['s] motion[] to dismiss on the basis of attorney immunity under Texas law is an appealable collateral order." *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 348 (5th Cir. 2016). Thus, we have jurisdiction to review the district court's denial of Nichamoff's motion to dismiss. *See id.* "We review de novo a district court's denial of a motion to dismiss based on immunity [and] also review de novo a district court's interpretation of state law." *Id.* at 345. When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, we take all factual allegations as true and construe the facts in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). "Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006).

When deciding whether to apply a state-law immunity, we are "bound to

answer the question the way the state's highest court would resolve the issue." *Troice*, 816 F.3d at 345 (quoting *Occidental Chem. Corp. v. Elliot Turbomachinery Co.*, 84 F.3d 172, 175 (5th Cir. 1996)). "In applying Texas law, we look first to the decisions of the Texas Supreme Court." *Hux v. S. Methodist Univ.*, 819 F.3d 776, 780 (5th Cir. 2016). If the Texas Supreme Court has not ruled on an issue, we "make an *Erie* guess, predicting what [the Texas Supreme Court] would do if faced with the [same] facts." *Id.* In doing so, we typically "treat state intermediate courts' decisions as the strongest indicator of what a state supreme court would do, absent a compelling reason to believe that the state supreme court would reject the lower courts' reasoning." *Id.* at 780–81.

Under Texas law, attorney immunity is a "comprehensive affirmative defense protecting attorneys from liability to non-clients, stemming from the broad declaration . . . that 'attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages.'" *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (quoting *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App. 1910, writ ref'd)), *reh'g denied* (Sept. 11, 2015). The immunity aims "to ensure 'loyal, faithful, and aggressive representation by attorneys employed as advocates.'" *Id.* (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.–Dallas 2000, pet. denied)). Generally, the immunity applies to "conduct . . . involving 'the office, professional training, skill, and authority of an attorney.'" *Reagan Nat'l Advert. of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at *3 (Tex. App.—Austin July 29, 2008, no pet.) (citations omitted). If an attorney shows that the conduct at issue was "part of the discharge of the [attorney's] duties in representing [the] client," immunity is appropriate. *Cantey*, 467 S.W.3d at 481 (quoting *Toles v. Toles*, 113 S.W.3d 899, 910–11 (Tex. App.–Dallas 2003, no pet.)).

On the other hand, "attorneys are not protected from liability to non-

clients for their actions when they do not qualify as 'the kind of conduct in which an attorney engages when discharging . . . duties to [a] client.'" *Id.* at 482 (quoting *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01–06–00696–CV, 2008 WL 746548, at *7 (Tex. App.–Houston Mar. 20, 2008, pet. denied) (mem. op. on reh'g)). For example, an attorney cannot avoid liability "for the damages caused by [the attorney's] participation in a fraudulent business scheme with [the] client, as 'such acts are entirely foreign to the duties of an attorney.'" *Id.* (quoting *Poole v. Hous. & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882)).

Importantly, an attorney seeking dismissal based on attorney immunity bears the burden of establishing entitlement to the defense. *JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 468 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also Cantey*, 467 S.W.3d at 484 ("An attorney who pleads the affirmative defense of attorney immunity has the burden to prove that [the] alleged wrongful conduct . . . is part of the discharge of [the attorney's] duties to [the] client."). To meet this burden, the attorney must "conclusively establish that [the] alleged conduct was within the scope of [the attorney's] legal representation of [the] client." *Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-16-00394-CV, 2017 WL 944027, at *3 (Tex. App.—Dallas Mar. 10, 2017, no. pet. h.); *accord Cantey*, 467 S.W.3d at 484. Although Texas courts occasionally grant attorney immunity at the motion to dismiss stage, in those cases, the scope of the attorney's representation—and thus entitlement to the immunity—was apparent on the face of the complaint. *See, e.g.*, *Highland Capital Mgmt., LP v. Looper Reed & McGraw,* P.C., No. 05-15-00055-CV, 2016 WL 164528, at *1, *7 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) (granting immunity when the complaint specifically alleged that a law firm's wrongful actions occurred "during [the firm's] representation of" the employee in that suit and concluding that "[b]ecause the facts alleged by [the plaintiff] were

4

sufficient to support the defense of immunity, [the firm] did not need to present further evidence in support of its motion").

## II

Nichamoff has not conclusively established that the conduct alleged by Kelly fell within the scope of his representation of Rembach. Kelly acknowledges in her complaint that "Nichamoff was Rembach's attorney" at the time Kelly acquired the Legacy shares. But this information establishes only that Rembach was Nichamoff's client. It does not establish the *scope* of Nichamoff's representation. The mere fact that an attorney was representing a client at the time of alleged fraudulent activity is not enough to warrant immunity. *See id.* at *5 ("A lawyer . . . cannot shield his [or her] own willful and premeditated fraudulent actions from liability simply on the ground that [the lawyer] is an agent of the client.") (quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App.–Houston [1st Dist.] 2005, pet. denied)). Without more information about the scope of Nichamoff's representation of Rembach, he cannot conclusively establish at this stage that the conduct alleged by Kelly fell within it.

Moreover, Kelly's complaint alleges that "Nichamoff received payments, not just for his fee for the [stock transfer] transaction, but additional payments, as a result of his participation in the conspiracy to defraud Plaintiff Kelly." Kelly also claims that the Defendants (including Nichamoff) "had a pecuniary interest in . . . Kelly's acquisition of" Legacy stock. These contentions allege that Nichamoff was "participat[ing] in independently fraudulent activities," rather than merely representing a client's interests in a business transaction. *Hazen*, 2008 WL 2938823, at *3. While "[m]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney[,]'" Texas courts have repeatedly warned that "[i]f a lawyer participates in independently

fraudulent activities, [the lawyer's] action is 'foreign to the duties of an attorney.'" *Highland*, 2016 WL 164528, at \*4, \*5 (quoting *Cantey*, 467 S.W.3d at 483; *Alpert*, 178 S.W.3d at 406). This includes "an attorney who participates in a fraudulent business scheme with [the] client" and is thus "not protected by the doctrine because such acts are 'entirely foreign to the duties of an attorney' and 'not part of the discharge of an attorney's duties in representing a party.'" *Santiago*, 2017 WL 944027, at \*3.

Crediting Kelly's allegations, Nichamoff took actions that constitute fraud independent of his duties as an attorney and would not qualify as "acts taken and communications made to facilitate the rendition of legal services to [the client]." *Dixon*, 2008 WL 746548, at \*9. Nichamoff "cannot shield his own willful and premeditated fraudulent actions from liability simply on the ground that he is an agent of his client." *Alpert*, 178 S.W.3d at 406. Instead, independently fraudulent conduct is "foreign to the duties of an attorney" and falls outside the scope of client representation. *Cantey*, 467 S.W.3d at 483; *see also LJH, Ltd. v. Jaffe*, No. 4:15-CV-00639, 2017 WL 447572, at \*3 (E.D. Tex. Feb. 2, 2017) ("[I]t is possible, based on the allegations in the Second Amended Complaint, that Jaffe was acting based upon his ownership interest in [the company involved in the business transaction with the plaintiff] and not solely as an attorney."). Thus, at this motion to dismiss stage, Nichamoff has failed to carry his heavy burden of establishing entitlement to attorney immunity.

## III

Because Nichamoff has failed to establish the scope of his representation of Rembach and that his alleged conduct fell within that scope, we affirm the district court's judgment on those alternative grounds. *See Ross v. Midwest Commc'ns, Inc.*, 870 F.2d 271, 272 (5th Cir. 1989). We decline to reach the merits of Kelly's argument—embraced by the district court—that an attorney is *never* entitled to immunity under Texas law if the alleged conduct was

unrelated to litigation or a "litigation-like" setting. As Kelly points out, Nichamoff is unable to identify a case in which a Texas court has applied attorney immunity in a situation like this one, in which the attorney's conduct was disconnected from litigation and did not occur in a litigation-like setting, such as foreclosure proceedings. On the other hand, Kelly is similarly unable to identify a case in which a Texas court has expressly adopted the bright-line limitation on attorney immunity that she urges.

In a recent case, *Cantey Hanger, LLP v. Byrd*, a slim majority of the Texas Supreme Court explicitly declined to address this very question. 467 S.W.3d at 482 n.6. ("Because we conclude that [the defendant law firm's] alleged conduct falls within the scope of its duties in representing its client in litigation, we need not consider the attorney-immunity doctrine's application to an attorney's conduct that is unrelated to litigation.").[1] Meanwhile, an animated dissent insisted that an "attorney's conduct must have occurred in litigation" for attorney immunity to apply. *Id.* at 486 (Green, J., dissenting). Prior to *Cantey*, this court expressly rejected the argument that Texas's attorney immunity applies only in the "litigation context," although those cases involved settings with litigation-like qualities.[2] In post-*Cantey* decisions, Texas appellate courts have similarly declined to adopt a bright-line limitation on the

---

[1] Despite this renunciation, the majority nonetheless cited Texas cases in which attorney immunity applied outside of litigation, noting that although "[t]he majority of Texas cases addressing attorney immunity arise in the litigation context[, . . . .] that is not universally the case." *Id.* (citing *Campbell v. Mortgage Elec. Registration Sys., Inc.*, 03-11-00429-CV, 2012 WL 1839357, at *6 (Tex. App.—Austin May 18, 2012, pet. denied); *Hazen*, 2008 WL 2938823, at *8)).

[2] *See Iqbal v. Bank of Am., N.A.*, 559 F. App'x 363, 365 (5th Cir. 2014) (unpublished) ("BDFTE was retained to assist in the foreclosure, and the actions complained of by the Iqbals are within the scope of their representation. The Iqbals argue that attorney immunity applies only in the litigation context, but that stance is not in line with Texas law."); *Lassberg v. Bank of Am., N.A.*, 660 F. App'x 262, 267 (5th Cir. 2016) (unpublished) (same).

protection.[3] Nonetheless, as both the district court and Kelly observed, no Texas court appears to have applied attorney immunity in a case like this one, in which the alleged conduct occurred in a context disconnected from litigation.

Without a clear answer from the Texas Supreme Court, deciding this appeal on the ground urged by Kelly would compel us to either limit or expand Texas law in ways Texas courts have yet to do. And we need not do so, because even if Texas's attorney immunity extends to the work of transactional lawyers, Nichamoff has not conclusively shown, as Texas courts hold he must at this stage, that his alleged conduct fell within the scope of his legal representation of Rembach. Consequently, he has failed to meet his burden under Texas law and dismissal is inappropriate at this time.

We note for the district court that because this case involves an area of Texas law that appears to be somewhat in flux, with the benefit of more evidence and inquiry, intervening Texas decisions applying *Cantey* may provide greater clarity on the limits of the protection and whether courts should decline to apply it in cases like this one, in which the alleged conduct may be shown to have occurred outside of litigation or a litigation-like setting. Thus, we do not intend to foreclose Kelly's ability to re-raise her argument at a later stage. We conclude only that we need not reach it at this time.

---

[3] *Santiago*, 2017 WL 944027, at *4 ("Even if we were to conclude that [the law firm's] actions occurred outside of the litigation context, the doctrine applied."); *Highland*, 2016 WL 164528, at *6 n.3 ("Highland argues [*Cantey*] does not apply to this 'pre-litigation' conduct. But the court's reasoning in [*Cantey*] focuses on whether the conduct is 'outside the scope of an attorney's representation of [the] client.'" (internal citation omitted)); *Farkas v. Wells Fargo Bank, N.A.*, No. 03-14-00716-CV, 2016 WL 7187476, at *8 (Tex. App.—Austin Dec. 8, 2016, no pet.) ("Farkas asserts that attorney immunity applies only for attorneys involved in litigation, and Brice's actions here were not conducted 'in the course of any underlying litigation.' . . . We also note, however, as did the supreme court in *Cantey Hanger*, that '[t]he majority of Texas cases addressing attorney immunity arise in the litigation context [,] [b]ut that is not universally the case.' The supreme court cited to two cases, both of which are opinions of this Court, that indicate that attorney immunity applies outside of the litigation context." (internal citations omitted)).

No. 16-20699

**IV**

For the foregoing reasons, we AFFIRM on alternative grounds the district court's denial of Nichamoff's motion to dismiss.