# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40101

United States Court of Appeals
Fifth Circuit

**FILED**
January 2, 2019

Lyle W. Cayce
Clerk

IRONSHORE EUROPE DAC,

> Plaintiff - Appellee

v.

SCHIFF HARDIN, L.L.P.,

> Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before DAVIS, COSTA, and OLDHAM, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant Schiff Hardin, L.L.P. ("Schiff Hardin"), a law firm, challenges the district court's denial of its Rule 12(b)(6) motion to dismiss the complaint and rejection of its attorney immunity defense. The Plaintiff, Ironshore Europe DAC ("Ironshore"), issued an excess insurance policy to the firm's client Dorel Juvenile Group, Inc. ("Dorel"). Ironshore casts its complaint as one for negligent misrepresentation against Schiff Hardin, alleging that the firm made misstatements and omissions in the course of reporting on the litigation against Ironshore's insured Dorel, the firm's client. Schiff Hardin argues that it is entitled to attorney immunity against Ironshore's negligent misrepresentation claim. As discussed below, we conclude that the district

No. 18-40101

court erred in rejecting Schiff Hardin's attorney immunity defense because the conduct sued on occurred during the representation of the firm's client, Dorel. We therefore REVERSE the denial of Schiff Hardin's motion and RENDER judgment dismissing the plaintiff's complaint pursuant to Rule 12(b)(6).[1]

## I. Background

In 2015, Nicole and Cameron Hinson filed a lawsuit in the Eastern District of Texas against Dorel, which allegedly designed, marketed, and sold the forward-facing car seat in which their one-year-old child, C.H., was seated when the Hinson vehicle was involved in an accident in Texas. The Hinsons alleged that C.H. suffered a paralyzing spinal cord injury and a brain injury in the accident. They asserted claims of negligence, gross negligence, marketing defect, and failure to adequately warn consumers of the risks posed by the use of forward-facing car seats with young children.

Dorel was self-insured up to $6 million. The appellee Ironshore issued a policy of excess insurance to Dorel for liability above $6 million up to $25 million. The policy included an "assistance and cooperation" provision giving Ironshore the right to associate with Dorel in the defense of any claim, requiring Dorel to cooperate in the event Ironshore exercised that right, and requiring Dorel to promptly provide any litigation-related information requested by Ironshore.

Dorel retained the law firm Schiff Hardin, the defendant-appellant, to defend it in the Hinson suit. Although Schiff Hardin did not represent Ironshore, the firm did provide Ironshore with information about the litigation,

---

[1] As discussed below, a district court's order denying a defendant's motion to dismiss on the basis of attorney immunity under Texas law is an appealable collateral order. In this appeal, this court only has jurisdiction over the district court's immunity ruling and therefore does not consider the other aspects of the district court's ruling.

including developments in the litigation and Schiff Hardin's opinions of the settlement value and potential judgment value of the case.

The Hinson case went to trial in June 2016, and the jury returned a verdict adverse to Dorel and awarded total compensatory damages of $24,438,000 and an additional $10 million in exemplary damages. After the verdict, Ironshore retained its own counsel for the first time. The parties participated in post-trial mediation, during which a confidential settlement was agreed upon in an amount that reached Ironshore's policy.

Ironshore then filed the instant lawsuit against Schiff Hardin asserting a claim for negligent misrepresentation pursuant to the Restatement (Second) of Torts § 552,[2] which has been adopted by the Supreme Court of Texas.[3] Ironshore alleged that the firm made various misrepresentations and omissions in the course of reporting on the Hinson litigation to Ironshore, including making false statements in verbal and written reports and failing to disclose certain information about the underlying suit's facts and settlement and judgment value. Ironshore alleged that the firm's conduct led it to believe that the suit posed no threat of exposure to its policy.

Ironshore's complaint alleged that the misrepresentations took place "[i]n the course of Schiff's business" representing Dorel but "were made by Schiff separate from its representation and defense of Dorel in the Lawsuit and were not necessary to, nor a part of, Schiff's defense of Dorel in the Lawsuit." Ironshore also alleged that the firm failed to disclose certain developments in

---

[2] RESTATEMENT (SECOND) OF TORTS § 552 (AM. LAW INST. 1977) ("One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.").

[3] *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

No. 18-40101

the Hinson litigation, including adverse pre-trial rulings and a pre-trial settlement offer of $3.25 million. Ironshore argued that it relied to its detriment on the negligent misrepresentations and that had it known the true facts about the developments in the lawsuit, settlement offers, and the danger to its policy, it would have settled with the Hinsons for a much lower amount than the ultimate verdict or post-verdict settlement.

Schiff Hardin filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that it was entitled to attorney immunity under Texas law. The firm argued that any communications with Ironshore were part of the discharge of the firm's duties to its client, Dorel.

The district court denied Schiff Hardin's motion to dismiss based on attorney immunity.[4] The district court ventured an *Erie*[5] guess to determine that the attorney immunity doctrine under Texas law did not foreclose a negligent misrepresentation claim. Schiff Hardin timely filed this appeal challenging that ruling.

## II.  Standards of Review

A district court's order denying a defendant's motion to dismiss on the basis of attorney immunity under Texas law is an appealable collateral order because "attorney immunity is properly characterized as a true immunity from

---

[4] The district court granted Schiff Hardin's motion to dismiss as to Ironshore's claims based on 1) alleged misrepresentations related to predictions of future outcomes, such as a possible jury verdict or settlement outcome; and 2) alleged misrepresentations related to Schiff Hardin's subjective assessments about trial, including that trial "was fine" or "went pretty well." Specifically, the district court determined that the former allegations did not fall within the scope of a negligent misrepresentation claim and that the latter allegations failed to state such a claim. However, the district court ventured an *Erie* guess to determine that omissions can sometimes form the basis for a negligent misrepresentation claim under Texas law, and it denied the motion to dismiss as to Ironshore's allegation that the firm misrepresented or failed to disclose information about offers to settle.

[5] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

4

suit, not as a defense to liability."[6]  This court reviews de novo the denial of a motion to dismiss based on immunity.[7]

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff."[8]  "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint."[9] "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[10]  "[A]n attorney seeking dismissal based on attorney immunity bears the burden of establishing entitlement to the defense."[11]  "To meet this burden, the attorney must 'conclusively establish that [the] alleged conduct was within the scope of [the attorney's] legal representation of [the] client.'"[12]  "Texas courts occasionally grant attorney immunity at the motion to dismiss stage [where] the scope of the attorney's representation—and thus entitlement to the immunity—[i]s apparent on the face of the complaint."[13]

This court also reviews de novo a district court's interpretation of state law and is bound to resolve the issue as the state's highest court would.[14]  "In

---

[6] *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346, 348 (5th Cir. 2016).

[7] *Id.* at 345 (citation omitted).

[8] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

[9] *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017) (quoting *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006)).

[10] *Lone Star*, 594 F.3d at 387 (citation omitted).

[11] *Kelly*, 868 F.3d at 375 (citations omitted).

[12] *Id.* (alterations in original) (citation omitted) (quoting *Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-16-00394-CV, 2017 WL 944027, at *3 (Tex. App.—Dallas Mar. 10, 2017, no pet.) (mem. op.)).

[13] *Id.* (citation omitted).

[14] *Troice*, 816 F.3d at 345 (citation omitted) (quoting *Occidental Chem. Corp. v. Elliott Turbomachinery Co.*, 84 F.3d 172, 175 (5th Cir. 1996)).

applying Texas law, we look first to the decisions of the Texas Supreme Court."[15]  "If the Texas Supreme Court has not ruled on an issue, we 'make an *Erie* guess, predicting what [the Texas Supreme Court] would do if faced with the [same] facts.'"[16]  "In doing so, we typically 'treat state intermediate courts' decisions as the strongest indicator of what a state supreme court would do, absent a compelling reason to believe that the state supreme court would reject the lower courts' reasoning.'"[17]

### III.  Discussion

As discussed in greater detail below, the attorney immunity doctrine under Texas law generally insulates a lawyer from civil liability to a non-client for conduct performed as part of the discharge of the lawyer's duties to his client.  We first make an *Erie* guess as to whether the Supreme Court of Texas would extend the attorney immunity doctrine to claims of negligent misrepresentation.  Next, we consider whether the requirements of attorney immunity are satisfied on the facts alleged in this case.

### a.  Attorney Immunity from Negligent Misrepresentation Claims

As indicated, this appeal raises the question whether the attorney immunity doctrine under Texas law shields an attorney against claims by a non-client based on negligent misrepresentation made in the course of counsel's representation of his clients.  Having found no decisions from the Supreme Court of Texas that directly address this issue, we make an *Erie* guess that the Supreme Court of Texas would apply the attorney immunity doctrine to shield attorneys for such negligent misrepresentation claims.

---

[15] *Kelly*, 868 F.3d at 374 (quoting *Hux v. S. Methodist Univ.*, 819 F.3d 776, 780 (5th Cir. 2016)).

[16] *Id.* (alterations in original) (quoting *Hux*, 819 F.3d at 780).

[17] *Id.* (quoting *Hux*, 819 F.3d at 780-81).

No. 18-40101

The Supreme Court of Texas recognized in *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*[18] that the absence of privity of contract does not preclude a non-client from suing an attorney for negligent misrepresentation under the Restatement (Second) of Torts § 552, which creates liability for providing false information to persons other than his client. In that 1999 decision, the court did not address the issue of attorney immunity but focused its analysis on the issue of privity, which it found was not required for a negligent misrepresentation claim against an attorney.[19]

More recently, the Supreme Court of Texas clarified the scope and application of the attorney immunity doctrine under Texas law in *Cantey Hanger, LLP v. Byrd*[20] and *Youngkin v. Hines*.[21] In *Cantey Hanger*, the court described this doctrine as "intended to ensure 'loyal, faithful, and aggressive representation by attorneys employed as advocates'" by avoiding "the inevitable conflict that would arise if [they] were 'forced constantly to balance [their] own potential exposure against [their] client's best interest.'"[22]

The *Cantey Hanger* court made it clear that attorneys are generally "immune from civil liability to non-clients 'for actions taken in connection with representing a client in litigation.'"[23] Attorney immunity does not extend to actions that "do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client'" or that "are entirely foreign to the duties of an attorney" because they do "not involve the provision of legal

---

[18] *McCamish*, 991 S.W.2d at 791, 795.

[19] *See id.* at 791-95.

[20] *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015).

[21] *Youngkin v. Hines*, 546 S.W.3d 675 (Tex. 2018).

[22] *Cantey Hanger*, 467 S.W.3d at 481, 483 (first quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied); then quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)).

[23] *Id.* at 481 (citations omitted) (quoting *Alpert*, 178 S.W.3d at 405).

7

services and would thus fall outside the scope of client representation."[24] However, this immunity extends to even wrongful conduct that is "part of the discharge of the lawyer's duties in representing his or her client."[25] The *Cantey Hanger* court declined to find a general fraud exception to the doctrine of immunity, reasoning that "the focus in evaluating attorney liability to a non-client is 'on the kind—not the nature—of the attorney's conduct,'" so "[m]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'"[26]

In *Cantey Hanger*, the plaintiffs alleged that an attorney made intentional misrepresentations in the "preparation of a bill of sale [transferring] an airplane awarded to [the firm's] client in an agreed divorce decree," for the purpose of shifting tax liability between the parties to the divorce in violation of the decree.[27] The court reasoned that the preparation of the bill of sale to facilitate the transfer of the airplane pursuant to the decree "'was conduct in which an attorney engages to discharge his duties to his client' and was not 'foreign to the duties of an attorney.'"[28] It found that the additional allegations about the intentional misrepresentations to shift tax liability did not bring the conduct outside the scope of the firm's duties to its client.[29]

---

[24] *Id.* at 482 (citations omitted) (first quoting *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *9 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op. on reh'g); then quoting *Poole v. Hous. & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882)).

[25] *Id.* at 481-82 (citation omitted) (first quoting *Toles v. Toles*, 113 S.W.3d 899, 910-11 (Tex. App.—Dallas 2003, no pet.); then quoting *Alpert*, 178 S.W.3d at 406).

[26] *Id.* at 483-84 (citations omitted) (first quoting *Dixon Fin. Servs.*, 2008 WL 746548, at *8; then quoting *Alpert*, 178 S.W.3d at 406).

[27] *Id.* at 485 (quoting *Byrd v. Vick, Carney & Smith LLP*, 409 S.W.3d 772, 780 (Tex. App.—Fort Worth 2013), *rev'd sub nom. Cantey Hanger*, 467 S.W.3d 477).

[28] *Id.* (quoting *Byrd*, 409 S.W.3d at 780).

[29] *Id.*

The *Cantey Hanger* court included a footnote in its discussion stating:

> In *McCamish*, we held that an attorney can be liable to a non-client for negligent misrepresentation where "an independent duty to the nonclient [arises] based on the [attorney's] manifest awareness of the nonclient's reliance on the misrepresentation and the [attorney's] intention that the nonclient so rely." The plaintiffs do not assert such a claim here.[30]

In April 2018, the Supreme Court of Texas reaffirmed in *Youngkin* that *Cantey Hanger* "controls [its] analysis of attorney immunity" and summarized the *Cantey Hanger* rule as follows: "[A]n attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer," which "inquiry correctly focuses on the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct."[31]  The court noted that "[t]he only facts required to support an attorney-immunity defense are the type of conduct at issue and the existence of an attorney-client relationship at the time."[32]

In *Youngkin*, the plaintiff alleged that the attorney knowingly participated in a fraudulent scheme to deprive the plaintiff of property by entering a settlement agreement on his clients' behalf "knowing they had no intention to comply," helping his clients avoid compliance by preparing a deed used to transfer the property to another person, and aiding that person in his efforts to wrongfully assert ownership of the property.[33]  The court noted that it was required, under *Cantey Hanger*, to "look beyond [the plaintiff's] characterizations of activity as fraudulent and conspiratorial and focus on the conduct at issue," which it described as "negotiating and entering a settlement

---

[30] *Id.* at 483 n.7 (alterations in original) (quoting *McCamish*, 991 S.W.2d at 792).
[31] *Youngkin*, 546 S.W.3d at 681 (citations omitted).
[32] *Id.* at 683.
[33] *Id.* at 678-79.

agreement, preparing transfer documents, and filing a lawsuit."[34]  The court found that this "conduct was directly within the scope of [the lawyer's] representation of his clients, regardless of any disagreement over the substance of the settlement agreement" and was "not foreign to the duties of a lawyer."[35]

In this case, the district court denied Schiff Hardin's attorney immunity defense, venturing an *Erie* guess that the attorney immunity doctrine did not foreclose a negligent misrepresentation claim.  In so ruling, the district court found that *McCamish* had not been overruled because the Supreme Court of Texas had expressly declined to address it in the court's more recent guidance on the doctrine of attorney immunity, citing the *Cantey Hanger* footnote referencing the *McCamish* case.

On appeal, Ironshore argues that the footnote in *Cantey Hanger*, upon which the district court relied, creates an exception to attorney immunity for negligent misrepresentation claims.  However, this footnote does not bear the weight Ironshore places on it.  Rather, the footnote merely acknowledges that the court was not ruling on a negligent misrepresentation claim because none was before it in that case.  The *Cantey Hanger* court's rejection of the argument that attorney immunity does not extend to fraudulent and other intentional conduct committed by the attorney in the course of representing his client makes it clear to us that the Supreme Court of Texas would extend immunity to the much less egregious conduct of negligent misrepresentation, whether or not the non-client relied on the negligent misrepresentation.  The district court therefore erred in determining that attorney immunity did not apply to claims of negligent misrepresentation.

---

[34] *Id.* at 682, 684 (citation omitted).
[35] *Id.*

No. 18-40101

### b. Analysis of Schiff Hardin's Conduct

Having made the *Erie* guess that the Supreme Court of Texas would extend the attorney immunity doctrine to negligent misrepresentation claims, we turn to the question whether the requirements for attorney immunity are satisfied in this case.

Whether an attorney's conduct was in the scope of his representation of a client is a legal question.[36] Attorney immunity applies to all "actions taken in connection with representing a client in litigation," even wrongful conduct that is "part of the discharge of the lawyer's duties in representing his or her client,"[37] as long as it is not "entirely foreign to the duties of an attorney."[38] For this analysis, the Supreme Court of Texas has repeatedly instructed courts to simply look to the general kind of conduct at issue and whether attorneys engage in that kind of conduct when discharging duties to a client.

The factual allegations of the complaint in this case reflect that all of the alleged misrepresentations and omissions were related to Schiff Hardin's representation of Dorel in the Hinson litigation. Looking beyond Ironshore's characterization of the firm's conduct as wrongful, as we must, the type of conduct at issue in this case includes: (1) reporting on the status of litigation and settlement discussions; (2) providing opinions as to the strength and valuation of plaintiffs' claims; (3) providing opinions as to the perceived litigation strategies employed by opposing counsel and the potential prejudice of pre-trial developments; (4) providing estimates of potential liability; (5) reporting on the progress of a jury trial; and (6) reporting on pre-trial rulings and pre-trial settlement offers.

---

[36] *Id.* at 683.

[37] *Cantey Hanger*, 467 S.W.3d at 481-82 (citations omitted) (first quoting *Alpert*, 178 S.W.3d at 405; then quoting *Toles*, 113 S.W.3d at 910-11; and then quoting *Alpert*, 178 S.W.3d at 406).

[38] *Id.* at 482 (citations omitted) (quoting *Poole*, 58 Tex. at 137).

11

We are satisfied that the kinds of conduct at issue in this case fall within the routine conduct attorneys engage in when handling this type of litigation. Schiff Hardin's conduct falls squarely within the scope of the firm's representation of its client. This court is "not bound to accept as true [plaintiff's] legal conclusion"[39] that the misrepresentations were somehow "separate from [Schiff's] representation and defense of Dorel" and "not necessary to, nor a part of, Schiff's defense of Dorel in the Lawsuit." Immunity is established on the face of the complaint, which alleges only misrepresentations and omissions related to the Hinson litigation, in which Schiff Hardin undisputedly represented Ironshore's insured Dorel in the defense of a products liability case. Schiff Hardin's first duty was to its client, Dorel, and it was up to Ironshore to retain its own counsel if it was dissatisfied with the comprehensiveness of the information it was receiving from its insured's attorneys. Therefore, we find that the requirements for attorney immunity are met, Schiff Hardin's Rule 12(b)(6) motion to dismiss should be granted, and the plaintiff's complaint should be dismissed.

## IV. Conclusion

For these reasons, we conclude that the district court erred in denying Schiff Hardin's motion to dismiss plaintiff's complaint. Accordingly, we REVERSE the district court's ruling and RENDER judgment dismissing plaintiff's complaint.

---

[39] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).