# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 17, 2019

Lyle W. Cayce
Clerk

No. 17-11464

————

SAMUEL TROICE, Individually and on behalf of a class of all others
similarly situated; MICHOACAN TRUST, Individually and on behalf of a
class of all others similarly situated; PAM REED, Putative Class
Representative,

> Plaintiffs - Appellants

v.

GREENBERG TRAURIG, L.L.P.; YOLANDA SUAREZ,

> Defendants - Appellees

————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CV-4641

————

Before JONES, CLEMENT, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Under Texas law, an attorney is immune from civil suits brought by a
non-client when the conduct at issue occurred within the scope of the attorney's
representation of a client. This appeal concerns three purported exceptions to
that doctrine. The district court held that none of them exists. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal has its roots in the R. Allen Stanford Ponzi Scheme that has
already been the subject of much litigation. *See Janvey v. Democratic*

No. 17-11464

*Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 188-89 (5th Cir. 2013) (detailing the Ponzi scheme and the civil and criminal actions it spawned). The scheme was centered around the sale of certificates of deposit ("CDs") through Stanford International Bank, Ltd. and related entities. *See id.* at 188. The basic workings of the fraud were to take the funds raised from the CD sales and reissue them to purchasers as if they were returns from investments. *See id.* The scheme eventually collapsed, and the Government and others brought criminal prosecutions and civil suits against Stanford and others. *See id.* at 188-89. The only aspect of the scheme before us is the purported involvement of an attorney then practicing at Greenberg Traurig ("Greenberg").

The receiver for the Stanford Receivership Estate, the Official Stanford Investors Committee, and three defrauded investors sued Greenberg under a respondeat superior theory. They alleged a Greenberg attorney conspired with Stanford to further the fraud. The investor plaintiffs ("plaintiffs" hereafter) also sought class certification. Greenberg moved to dismiss the claims for lack of subject matter jurisdiction, or in the alternative, for a judgment on the pleadings. The district court granted judgment on the pleadings and denied the motion for class certification as moot. The plaintiffs appealed. They have also moved that we certify to the Supreme Court of Texas the state law questions on which this case turns.

## DISCUSSION

We review the grant of a judgment on the pleadings *de novo*, utilizing "the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). That is, confined to the pleadings and accepting the allegations as true, we ask if "the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440

n.8 (5th Cir. 2000)). We will uphold the grant of judgment on the pleadings "only if there are no disputed issues of fact and only questions of law remain." *Id.* Only questions of law remain here.

Greenberg's winning argument in the district court was that attorney immunity under Texas law precluded the plaintiffs' claims. The plaintiffs countered that multiple exceptions to the general rule exist and permit Greenberg's liability. The district court disagreed. The issues here are primarily about Texas law. We first discuss why we will not certify and then move to our analysis of Texas law.

I.     *Certification of issues to the Supreme Court of Texas*

The Supreme Court of Texas has the discretion to accept certification of "determinative questions of Texas law having no controlling Supreme Court precedent." TEX. R. APP. P. 58.1. In deciding whether to certify issues, we consider whether there are "sufficient sources of state law" to allow us to make "a principled rather than conjectural conclusion"; "the degree to which considerations of comity [such as the likelihood of the issue's recurrence] are relevant"; and "practical limitations of the certification process" such as "significant delay and possible inability to frame the issue so as to produce a helpful response" from the relevant state appellate court. *Florida. ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 275 (5th Cir. 1976). Certification, though, "is not a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state.'" *Transcontinental Gas Pipeline Corp. v. Trans. Ins. Co.*, 958 F.2d 622, 623 (5th Cir. 1992).

The Texas Supreme Court has not directly answered the issues that confront us, and "this case involves an area of Texas law that appears to be somewhat in flux." *Kelly v. Nichamoff*, 868 F.3d 371, 377 (5th Cir. 2017).

No. 17-11464

Nonetheless, the substantial treatment of the issues by the Texas courts of appeals and the "cogent and sound arguments" presented by counsel give sufficient guidance about what the Supreme Court of Texas would hold. *Compass Bank v. King, Griffin & Adamson P.C.*, 388 F.3d 504, 505 (5th Cir. 2004). Accordingly, we DENY the motion for certification.

## II.     *Attorney immunity from liability to non-clients under Texas law*

To determine the applicable law, "we look first to the decisions of the Supreme Court of Texas," and if that court has not ruled, we then project that court's likely resolution of a case presenting facts such as are before us. *Kelly*, 868 F.3d at 374 (citations omitted). In our evaluation, "we typically 'treat state intermediate courts' decisions as the strongest indicator of what a state supreme court would do, absent a compelling reason to believe that the state supreme court would reject the lower courts' reasoning.'" *Id.* (citation omitted). "We may also consider Texas public policy interests." *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 143 (5th Cir. 2007).

Attorney immunity in Texas is a "comprehensive affirmative defense protecting attorneys from liability to non-clients." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). It protects an attorney where the "alleged conduct was within the scope of . . . legal representation." *Id.* at 484. The plaintiffs contend that, despite that general grant of immunity, Texas law provides for three circumstances that permit attorney liability to non-clients: (1) acts outside of the litigation context, (2) criminal acts, and (3) acts that violate the Texas Securities Act.

### A.     *The non-litigation exception*

In arguing that "attorney immunity does not extend to conduct outside of litigation," the plaintiffs largely rely on a dissent by four of the nine justices

4

of the Supreme Court of Texas in *Cantey Hanger*. The majority opinion did not make a holding on the issue. The dissent advocated limiting attorney immunity "to statements or conduct in litigation." *Id.* at 489 (Green, J., dissenting). Because conduct in "the scope of representation" is generally immunized and the acts at issue in *Cantey Hanger* were litigation-based "conduct . . . within the scope of . . . legal representation," the majority declined to answer the non-litigation exception issue. *Id.* at 484, 482 n.6 (majority opinion).

The dissent relied on policy reasons and two early attorney immunity cases. *Id.* at 488 (Green, J., dissenting). Neither of those cases expressly answered the question here, but the dissent concluded "the only way to reconcile [their holdings] . . . is to require the defendant-attorney's conduct to have occurred in litigation." *Id.* at 488. The dissent further cited later decisions from three of the Texas courts of appeals that, while also not expressly deciding the issue, discuss attorney immunity in the litigation context. *Id.* (citing *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287-88 (Tex. App.—Fort Worth 1997, pet. denied); *Bradt v. West*, 892 S.W.2d 56, 72 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Morris v. Bailey*, 398 S.W.2d 946, 947-48 (Tex. App.—Austin 1966, writ ref'd n.r.e.)).

Plaintiffs, though, have not cited any opinions that have directly confronted the issue and held in their favor. To the contrary, multiple courts of appeals have endorsed the application of attorney immunity outside of litigation. The Dallas Court of Appeals, for instance, has held "[e]ven if . . . [counsel's] actions occurred outside of the litigation context, the [immunity] doctrine applied." *Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-16-00394-CV, 2017 WL 944027, at *4 (Tex. App.—Dallas Mar. 10, 2017, no pet.) (mem. op.). The Supreme Court of Texas characterized an Austin Court of Appeals decision as applying attorney immunity to conduct in the context of

No. 17-11464

"attorneys hired to assist a mortgage beneficiary in the nonjudicial foreclosure of real property." *Cantey Hanger*, 467 S.W.3d at 482 n.6 (discussing *Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *6 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.)).[1] Similarly, the San Antonio Court of Appeals immunized attorneys sued for the non-litigation conduct of sending debt acceleration/foreclosure notices. *See Alanis v. Wells Fargo Bank Nat'l Ass'n*, No. 04-17-00069-CV, 2018 WL 1610939, at *1, 5 (Tex. App.—San Antonio Apr. 4, 2108, pet. denied) (mem. op.). Finally, the Beaumont Court of Appeals approvingly cited the application of attorney immunity to the non-litigation context in support of its decision to apply the doctrine to an attorney's acts in probate matters. *See Rogers v. Walker*, No. 09-15-00489-CV, 2017 WL 3298228, at *1-2, 4-5 (Tex. App.—Beaumont Aug. 3, 2017, pet. denied) (mem. op.).

This trend among the Texas courts of appeals also comports with the purpose of attorney immunity to "promote 'loyal, faithful, and aggressive representation'" in a comprehensive manner. *Youngkin v. Hines*, 546 S.W.3d 675, 682 (Tex. 2018) (citation omitted). Although not "limitless," the doctrine's application "is broad." *Id.* Its underlying rationale is to free attorneys "to practice their profession" and "advise their clients . . . without making themselves liable for damages." *Cantey Hanger*, 467 S.W.3d at 481 (citation omitted). The most likely understanding is that this includes the multitude of attorneys that routinely practice and advise clients in non-litigation matters.

We are persuaded the Supreme Court of Texas would apply the attorney immunity doctrine in the non-litigation context.

---

[1] The plaintiffs contend that nonjudicial foreclosure cases do not support a rejection of the non-litigation exception because of our statement in *Kelly* that "foreclosure proceedings" are "a litigation-like setting." 868 F.3d at 376. The Supreme Court of Texas, though, cited nonjudicial foreclosure as an instance of attorney immunity's application outside the litigation context. *See Cantey Hanger*, 467 S.W.3d at 482 n.6.

### B.     Crimes as a special category

The plaintiffs also argue "attorneys are not immune from suit when they engage in criminal conduct." Their contention is not that criminal conduct is an exception to the general rule immunizing behavior in the scope of representation but rather that criminal acts are categorically "never within" that scope.

"Criminal conduct can negate attorney immunity." *Gaia Envtl., Inc. v. Galbraith*, 451 S.W.3d 398, 404 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "[T]heft of goods or services on a client's behalf" is an example the Supreme Court of Texas provided of attorney behavior undoubtedly not immunized. *Youngkin*, 546 S.W.3d at 682-83. When Texas courts address criminal behavior in the immunity analysis, however, their framework remains whether that behavior was in the scope of representation and not whether it was criminal. *See Sacks v. Hall*, No. 01-13-00531-CV, 2014 WL 6602460, at *14 (Tex. App.—Houston [1st Dist.] 2014, no. pet) (mem. op.).

For example, the Houston Court of Appeals for the First District, while stating "[c]riminal conduct can negate attorney immunity," focused its evaluation on whether "allegedly actionable conduct was undertaken in the course of . . . representation of and discharge of . . . duties to [the] client." *Gaia Envtl.*, 451 S.W.3d at 404. Similarly, the Eastland Court of Appeals provided "fraudulent or criminal activity" as an example of "actions [consistently held to be] foreign to the duties of an attorney." *Rawhide Mesa-Partners, Ltd. v. Brown McCarroll, L.L.P.*, 344 S.W.3d 56, 60 (Tex. App.—Eastland 2011, no pet.). The Dallas Court of Appeals has also examined attorney conduct alleged to be "criminal," yet it too applied the doctrine of immunity because the conduct at issue was "'squarely within the scope' of . . . representation." *Highland Capital Mgmt., LP v. Looper Reed & McGraw, P.C.*, No. 05-15-00055-CV, 2016

No. 17-11464

WL 164528, at \*6 (Tex. App.—Dallas Apr. 13, 2016, pet. denied) (mem. op.) (citation omitted).

We conclude that criminal conduct does not automatically negate immunity, but in the usual case it will be outside the scope of representation. The only case the plaintiffs cite that clearly describes the criminal nature of an attorney's conduct as the appropriate standard is *Reagan Nat'l Advert. of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at \*10 (Tex. App.—Austin July 29, 2008, no pet.) (mem. op.). That court, however, used a burden-shifting framework that is the sort of "confus[ing] and complex[] . . . analysis" *Cantey Hanger* cited as a reason to avoid creating exceptions to attorney immunity. *See Regan Nat'l*, 2008 WL 2938823, at \*4, \*9; *Cantey Hanger*, 467 S.W.3d at 483-84.

Perhaps most persuasive are the complications that would arise between our precedent and decisions of the Supreme Court of Texas if we held criminal conduct to be categorically excluded from immunity. The *Cantey Hanger* court emphasized that "the focus in evaluating attorney liability to a non-client is 'on the kind — not the nature — of the attorney's conduct.'" 467 S.W.3d at 483 (citation omitted). That is, the analysis does not "focus[] on . . . the *alleged wrongfulness* of" the purported conduct such that "a lawyer is no more susceptible to liability for a given action merely because it is alleged to be . . . wrongful." *Youngkin*, 546 S.W.3d at 681. As an example of the doctrine at work, the Supreme Court of Texas cited "assaulting opposing counsel during trial" — a presumably criminal action — as an example of unimmunized conduct. *Id.* at 683; *see also* TEX. PENAL CODE ANN. § 22.01 (West 2017). The court held such behavior to fall outside the protections of immunity, not because it could be criminal, but "because it does not involve the provision of legal services and would thus fall outside the scope of client representation." *Cantey Hanger*, 467 S.W.3d at 482.

8

No. 17-11464

Thus, immunity can apply even to criminal acts so long as the attorney was acting within the scope of representation.  After arguing there was a categorical bar to applying immunity in this context, the plaintiffs did not make an alternative argument that immunity does not apply because Greenberg's acts were outside the scope of client representation.  Thus, we do not need to address any factual questions on this issue.

### C.     The TSA exception

Among the plaintiffs' allegations are that Greenberg aided and abetted Stanford in violating the Texas Securities Act.  They argue that Texas attorney immunity is a common law rule that the TSA abrogated.  Common law defenses may be abrogated by statute.  *See Dugger v. Arredondo*, 408 S.W.3d 825, 836 (Tex. 2013).  Statutes purporting to abrogate common law principles, though, must do so either expressly or by "necessary implication[]."  *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 428 (Tex. 2017) (citation omitted).[2]  Courts "must look carefully to be sure" the Texas Legislature intended to "modify common law rules."  *Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007).  Statutes "creat[ing] a liability unknown to the common law . . . will be strictly construed."  *Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex. 1993).  Texas courts of appeals have held the TSA abrogated at least some common law defenses because those defenses conflict with the Act's purpose or language.  *See, e.g.*,

---

[2] Greenberg emphasizes that "attorney immunity is properly characterized as a true immunity from suit" as opposed to "a defense to liability."  *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016).  Greenberg asserts that consequently, statutory abrogation of the doctrine must be evaluated like the abrogation of sovereign immunity, which must be "beyond doubt" with ambiguities construed in favor of granting immunity.  *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 701 (Tex. 2003).  That characterization does not meaningfully change our analysis of whether attorney immunity, a common law doctrine, has been clearly abrogated by statute.  *See Cantey Hanger*, 467 S.W.3d at 481.

*Duperier v. Texas State Bank*, 28 S.W.3d 740, 753 (Tex. App.—Corpus Christi 2000, pet. dism'd by agr.) (discussing the common law defense of ratification).

The Act contains no explicit abrogation of immunity. The plaintiffs argue public policy reasons and how such immunity would undermine the protection of investors. *See* TEX. REV. CIV. STAT. ANN. art. 581-10-1(B) (West. Supp. 2017). We acknowledge that the Supreme Court of Texas has held that Section 33 of the TSA, one of the provisions under which the plaintiffs sued, "should be given the widest possible scope." *Flowers v. Dempsey-Tegeler & Co.*, 472 S.W.2d 112, 115 (Tex. 1971).

Still, we consider the best indication of the proper result is that attorney immunity has been applied to bar claims under a statute similar to the TSA, namely the Texas Deceptive Trade Practices Act ("DTPA"). *See Sheller v. Corral Tran Singh, LLP*, 551 S.W.3d 357, 359, 362-66 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). "The provisions of the DTPA and TSA are entirely consistent," suggesting the jurisprudence of one may assist in interpreting the other. *See Frizzell v. Cook*, 790 S.W. 2d 41, 45 (Tex. App.—San Antonio 1990, writ denied). Regardless, it is not clear that the purposes of the TSA are impeded if attorneys are immunized while they work within the scope of their representation of clients. We conclude that the Supreme Court of Texas would not consider itself *sure* that the Texas Legislature intended to abrogate attorney immunity in the context of TSA claims.

AFFIRMED.