# IN THE SUPREME COURT OF TEXAS

════════════
No. 18-0595
════════════

CHERLYN BETHEL, INDIVIDUALLY AND AS THE REPRESENTATIVE OF THE ESTATE
OF RONALD J. BETHEL, DECEASED, PETITIONER,

v.

QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C., AND JAMES H.
MOODY, III, RESPONDENTS

════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
════════════════════════════════════════════════════

**Argued November 7, 2019**

JUSTICE DEVINE delivered the opinion of the Court.

This case presents two issues: first, whether an affirmative defense may be the basis of a
Rule 91a motion to dismiss; and second, whether the alleged destruction of evidence is an action
"taken in connection with representing a client in litigation," thus entitling the respondent attorneys
to attorney immunity. We join the court of appeals in concluding that Rule 91a permits dismissal
based on an affirmative defense. *See* 581 S.W.3d 306, 310 (Tex. App.—Dallas 2018). We also
agree with the court of appeals that, on the facts of this case, the respondent attorneys are entitled
to attorney immunity. *See id.* at 311-13. Accordingly, we affirm.

I

Petitioner Cherlyn Bethel's husband, Ronald, tragically died in a car accident while towing a trailer. Bethel sued the trailer's manufacturer, alleging that the trailer's faulty brakes caused the accident. Law firm Quilling, Selander, Lownds, Winslett & Moser, as well as attorney James "Hamp" Moody (collectively, Quilling), represented the manufacturer in the lawsuit. Bethel alleges that Quilling intentionally destroyed key evidence in the case by disassembling and testing the trailer's brakes before Bethel had the opportunity to either examine them or document their original condition.

Bethel sued Quilling for, among other things, fraud, trespass to chattel, and conversion.[1] Quilling moved to dismiss the case under Texas Rule of Civil Procedure 91a, arguing that it was entitled to attorney immunity as to all of Bethel's claims. The trial court granted Quilling's motion and dismissed the case. Bethel appealed, arguing that (1) affirmative defenses, such as attorney immunity, cannot be the basis of a Rule 91a dismissal, and (2) attorney immunity did not protect Quilling's conduct.

The court of appeals affirmed. 581 S.W.3d 306. First, the court of appeals concluded that attorney immunity could be the basis of a Rule 91a motion because the allegations in Bethel's pleadings established Quilling's entitlement to the defense. *Id.* at 309–10. Second, the court of appeals reasoned that Quilling's actions, while possibly wrongful, were the "kinds of actions" that are part of an attorney's duties in representing a client in litigation. *Id.* at 311–13. Thus, the court

---

[1] Bethel also sued the experts who conducted Quilling's examination but later nonsuited them to perfect this appeal. 581 S.W.3d 306, 309.

of appeals held that attorney immunity barred all of Bethel's claims.[2]

## II

Texas Rule of Civil Procedure 91a provides that a party "may move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.* In ruling on a Rule 91a motion, a court "may not consider evidence . . . and must decide the motion based solely on the pleading of the cause of action." TEX. R. CIV. P. 91a.6. We review the merits of a Rule 91a motion de novo. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam).

Attorney immunity is an affirmative defense. *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018). Bethel reasons that affirmative defenses are generally waived unless they are raised in the defendant's pleading. TEX. R. CIV. P. 94. Thus, Bethel contends, a court must look to the defendant's pleading to determine whether an affirmative defense is properly before the court. However, Rule 91a.6 expressly limits the court's consideration to "the pleading of the cause of action," together with a narrow class of exhibits. TEX. R. CIV. P. 91a.6. Because only a plaintiff's pleading is a "pleading of a cause of action," Bethel argues that courts may not consider a defendant's pleading in making a Rule 91a determination. Bethel therefore concludes that an affirmative defense can never be the basis of a Rule 91a motion.

---

[2] The court of appeals also concluded that Bethel perhaps waived the Rule 91a argument, but the court addressed the merits of the argument anyway. 581 S.W.3d at 309. In this Court, the parties agree that Bethel did not waive the argument and urge the Court to reach the Rule 91a question on the merits.

We disagree. We interpret rules of procedure according to our usual principles of statutory interpretation. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 579 (Tex. 2012). We therefore begin with the text of the rule and construe it according to its plain meaning. *Id.* However, Texas Rule of Civil Procedure 1 provides that the rules of procedure "shall be given a liberal construction" to further the rules' objective of "obtain[ing] a just, fair, equitable[,] and impartial adjudication" of parties' rights. TEX. R. CIV. P. 1. We thus apply our general canons of statutory interpretation in light of this specific guiding rule. *See, e.g.*, *In re Bridgestone Ams. Tire Operations, LLC*, 459 S.W.3d 565, 569 (Tex. 2015).

Bethel urges us to focus on the rule's requirement that the court "must decide the motion based *solely* on the pleading of the cause of action." TEX. R. CIV. P. 91a.6 (emphasis added). As Bethel sees it, this provision prohibits a court deciding a Rule 91a motion from considering *anything* other than the plaintiff's pleading. Of course, it is not possible to "decide the motion" without considering the motion itself, in addition to the plaintiff's pleading. Additionally, the rule provides that the court may hold a hearing on the motion. TEX. R. CIV. P. 91a.6. Thus, the rule contemplates that a court may consider at least the substance of the Rule 91a motion and arguments at the hearing, in addition to the plaintiff's pleadings, in deciding the motion. Bethel's proffered interpretation would render these aspects of the rule meaningless, preventing a court from considering even the substance of a Rule 91a motion or a response in deciding whether to dismiss the case. *See Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) (noting that in interpreting a statute, we avoid "absurd or nonsensical results" (quotations omitted)). Bethel's overly narrow interpretation of one piece of the rule simply does not comport with the text of the rule as a whole. *See id.* ("The statutory

4

words must be determined considering the context in which they are used, not in isolation.").

Construing the rules of procedure liberally, as Rule 1 requires us to do, we conclude that Rule 91a limits the scope of a court's factual, but not legal, inquiry. We begin with the text of the rule. *Ford Motor Co.*, 363 S.W.3d at 579. Rule 91a provides that "the court may not consider *evidence* in ruling on the motion and must decide the motion based solely on the pleading of the cause of action." TEX. R. CIV. P. 91a.6 (emphasis added). Thus, the rule contrasts "the pleading of the cause of action" with "evidence," not the defendant's pleading. This dichotomy indicates that the limitation is factual, rather than legal, in nature. Further, the rule provides that a court may dismiss a claim as lacking a basis in law "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1. Again, the rule limits the scope of the court's factual inquiry—the court must take the "allegations" as true—but does not limit the scope of the court's legal inquiry in the same way. Rather, the rule provides that a claim lacks a basis in law if the facts alleged "do not entitle the claimant to the relief sought." *Id.* The rule does not limit the universe of legal theories by which the movant may show that the claimant is not entitled to relief based on the facts as alleged.

This interpretation accounts for the parts of the rule that allow courts to consider the substance of Rule 91a motions and hearings in addition to the plaintiff's pleadings. *See* TEX. R. CIV. P. 91a.6. Both motions and hearings are avenues by which the movant may present legal theories as to why the claimant is not entitled to relief. Thus, the legal-factual distinction avoids violence

5

to the text of the rule as a whole while preserving the rule's intended limitation on factual inquiries.[3] *See Silguero*, 579 S.W.3d at 59 ("In interpreting statutes, we must look to the plain language, construing the text in light of the statute as a whole.").

Finally, Rule 1 directs us to consider expedition and cost to the parties and the state in construing rules of procedure. TEX. R. CIV. P. 1 ("To the end that this objective may be attained with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable, these rules shall be given a liberal construction."). Our interpretation of Rule 91a serves these objectives by allowing courts to dismiss meritless cases before the parties engage in costly discovery. Forcing parties to conduct discovery when the claimant's allegations conclusively establish the existence of an affirmative defense would be a significant waste of state and private resources.

In sum, Rule 91a limits a court's factual inquiry to the plaintiff's pleadings but does not so limit the court's legal inquiry. In deciding a Rule 91a motion, a court may consider the defendant's pleadings if doing so is necessary to make the legal determination of whether an affirmative defense is properly before the court. We therefore conclude that Rule 91a permits motions to dismiss based on affirmative defenses "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1. Of course, some affirmative defenses will not be conclusively established by the facts in a plaintiff's petition.

---

[3] Bethel also argues that we should read Rule 91a narrowly because previous versions of the rule included a mandatory fee-shifting provision. However, the fee-shifting provision is no longer mandatory and does not affect our analysis. *See* TEX. R. CIV. P. 91a.7 (providing that a court "may award" costs and fees to the prevailing party).

6

Because Rule 91a does not allow consideration of evidence, such defenses are not a proper basis for a motion to dismiss.

In this case, the allegations in Bethel's petition show that Bethel is not entitled to relief. In its Rule 91a motion, Quilling simply argued that the facts—as Bethel pleaded them—entitled Quilling to attorney immunity and thus dismissal under Rule 91a. The trial court did not need to look outside Bethel's pleadings to determine whether attorney immunity applied to the alleged facts. *See Youngkin*, 546 S.W.3d at 681–83 (holding that a defendant was "entitled to dismissal" based on attorney immunity, despite the defendant's failure to support his defense with evidence, because "the necessary facts [were] not in dispute"); *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 736–41 (Tex. 2019) (considering a federal preemption affirmative defense in the context of a Rule 91a motion); *cf. AC Interests, L.P. v. Tex. Comm'n on Envtl. Quality*, 543 S.W.3d 703, 706 (Tex. 2018) (noting that a Rule 91a motion is not the proper vehicle for dismissal based on untimely service of process because the court has to look beyond the pleadings to determine whether process was, in fact, untimely). Taking Bethel's allegations as true, the trial court determined that Bethel was not entitled to the relief sought because attorney immunity barred Bethel's claims.[4] That is enough for dismissal under Rule 91a.

---

[4] Bethel further argues that, even if an affirmative defense is established on the face of a plaintiff's pleading, dismissal is improper because there may be additional facts that negate the affirmative defense. However, Bethel has yet to articulate what kind of additional facts would negate attorney immunity in this case. If a plaintiff believes that there are additional facts that would negate an affirmative defense in a Rule 91a motion, the plaintiff may amend her pleadings accordingly. *See* TEX. R. CIV. P. 63 (allowing amendment in most circumstances); TEX. R. CIV. P. 91a.5(b) (contemplating amendment after a Rule 91a motion is filed).

III

We next turn to the question of attorney immunity. In *Cantey Hanger, LLP v. Byrd*, we held that, "as a general rule, attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client in litigation." 467 S.W.3d 477, 481 (Tex. 2015) (quotations omitted). The immunity inquiry "focuses on the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct." *Youngkin*, 546 S.W.3d at 681 (emphasis in original). Under this analysis, "a lawyer is no more susceptible to liability for a given action merely because it is alleged to be fraudulent or otherwise wrongful." *Id.* In this case, however, Bethel urges us to recognize an exception where a third party alleges that an attorney engaged in criminal conduct during the course of litigation.[5]

We recently declined to recognize fraud as an exception to the attorney-immunity doctrine. In *Cantey Hanger*, 467 S.W.3d at 484–86, we concluded that a law firm was shielded by attorney immunity for preparing documents ancillary to a divorce decree, even though the firm allegedly acted fraudulently in drafting the documents. "An attorney is given latitude to pursue legal rights that he deems necessary and proper precisely to avoid the inevitable conflict that would arise if he were forced constantly to balance his own potential exposure against his client's best interest." *Id.* at 483 (citations and quotations omitted). We recognized that a general fraud exception to attorney immunity would "significantly undercut" this purpose. *Id.* Thus, we concluded that "[m]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of

---

[5] Bethel's briefing frames the issue differently, arguing that "[c]riminal conduct is not 'an exception to the attorney-immunity doctrine'—it is simply not the type of civil wrong to which the doctrine applies." However the issue is framed, though, Bethel is asking us to categorically exempt allegedly criminal conduct from attorney immunity.

8

client representation or render it 'foreign to the duties of an attorney.'" *Id.* Instead, our focus remained on whether the attorney's complained-of conduct fell within "the scope of an attorney's legal representation of his client." *Id.* at 484.

The same reasoning applies here. Under Bethel's proposed exception, a plaintiff could avoid the attorney-immunity doctrine by merely alleging that an attorney's conduct was "criminal." This would "significantly undercut" the protections of attorney immunity by allowing non-client plaintiffs to sue opposing counsel so long as the plaintiffs alleged that the attorney's actions were criminal in nature. *Id.* at 483. We therefore conclude that criminal conduct is not categorically excepted from the protections of attorney civil immunity when the conduct alleged is connected with representing a client in litigation. *Accord Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 507 (5th Cir. 2019) (making an *Erie* guess that, under Texas law, attorney immunity "can apply even to criminal acts so long as the attorney was acting within the scope of representation").

We have long recognized, however, that attorney immunity is not boundless. *See Poole v. Hous. & T.C. Ry. Co.*, 58 Tex. 134 (1882) (holding that attorney immunity did not protect actions taken "for the purpose and with the intention of consummating [] fraud upon [the] appellant"). An attorney is not immune from suit for participating in criminal or "independently fraudulent activities" that fall outside the scope of the attorney's representation of a client. *Cantey Hanger*, 467 S.W.3d at 483. For example, immunity does not apply when an attorney participates in a fraudulent business scheme with her client or knowingly facilitates a fraudulent transfer to help her clients avoid paying a judgment. *Id.* at 482. Immunity also does not apply when an attorney's actions do not involve "the provision of legal services"—for example, when an attorney assaults opposing counsel. *Id.* Certainly, there is a wide range of criminal conduct that is not within the "scope of

9

client representation" and therefore "foreign to the duties of an attorney." *Id.* at 483. Thus, while we decline to recognize a per se criminal-conduct exception, an attorney's allegedly criminal conduct may fall outside the scope of attorney immunity. *See Troice*, 921 F.3d at 507 ("We conclude that criminal conduct does not automatically negate immunity, but in the usual case it will be outside the scope of representation."). We also note that nothing in our attorney-immunity jurisprudence affects an attorney's potential criminal liability if the conduct constitutes a criminal offense. And other remedies—such as sanctions, spoliation instructions, contempt, and disciplinary proceedings—may be available even if immunity shields an attorney's wrongful conduct. *See Cantey Hanger*, 467 S.W.3d at 482.

With these principles in mind, and taking Bethel's factual allegations as true, we conclude that Quilling's complained-of actions are the kind of actions that are "taken in connection with representing a client in litigation." *Cantey Hanger*, 467 S.W.3d at 481. Bethel's petition alleges that Quilling destroyed evidence in the underlying suit by: (1) disassembling the trailer's brakes; (2) failing to "establish any testing/inspection protocol at the time of the disassembly"; (3) failing to document the disassembly on video; (4) changing the position of the brakes' adjuster screws to facilitate the disassembly; (5) actuating some of the brakes to test them; and (6) spilling oil on the brakes during disassembly. Thus, at bottom, Bethel takes issue with the manner in which Quilling examined and tested evidence during discovery in civil litigation while representing Bethel's opposing party. These are paradigmatic functions of an attorney representing a client in litigation.

Bethel nevertheless contends that Quilling's conduct—criminal destruction of personal property—is not the type of conduct that is part of client representation. This certainly could be true in some circumstances. For instance, if an attorney destroyed a non-client's property that was

10

unrelated to litigation, then that conduct likely would not involve "the provision of legal services," and the attorney would not be entitled to immunity. *See Cantey Hanger*, 467 S.W.3d at 482. Immunity also may not protect the intentional destruction of evidence—for instance, if Quilling had simply taken a sledgehammer to the brakes. Such actions do not involve the provision of legal services and therefore cannot fall within the scope of client representation. *See id.* Here, however, Quilling acted in conjunction with its experts to examine and test key evidence in the underlying suit. It may well be, as Bethel alleges, that Quilling's actions resulted in the destruction of evidence. But again, for civil-immunity purposes, our analysis looks to the type of conduct, not whether that conduct was wrongful. *Youngkin*, 546 S.W.3d at 681. Because Quilling's allegedly wrongful conduct involved the provision of legal services—specifically, examining and testing relevant evidence—that conduct is protected by attorney immunity.

Based on the facts alleged in Bethel's petition, the courts below correctly concluded that attorney immunity shields Quilling from civil suit by a third party, whom Quilling did not represent, for conduct connected to Quilling's representation of its client in litigation. Accordingly, the judgment of the court of appeals is affirmed.

 

 

                             _____

                             John P. Devine
                             Justice

**OPINION DELIVERED:** February 21, 2020