

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00438-CV

———————————————

MIKE FARHAT, US GLOBAL ASSET INVESTMENTS, LLC, JOHN MARTIN FAUBUS, TRACY L. TRIMBLE, MARY MARTINEZ, MICHAEL W. BROOME, AND MICHAEL W. BROOME, P.C., Appellants

V.

WILSON SCOTT, LLC D/B/A CAPITAL ASSET RESOURCES, Appellee

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-308014-19

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

This is an anti-SLAPP appeal. Wilson Scott, LLC d/b/a Capital Asset Resources (CAR) sued its competitor, US Global Asset Investments, LLC; its founder Mike Farhat; US Global employees (and former CAR employees) Tracy L. Trimble and Mary Martinez; US Global salesperson (and former CAR salesperson) John Martin Faubus; and attorney Michael W. Broome and Michael W. Broome, P.C. (collectively, Broome), who had prepared documents and provided legal advice for US Global. The defendants (here, Appellants) filed a motion to dismiss CAR's claims under the Texas Citizens Participation Act (TCPA), and the trial court denied the motion. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003. In four issues, Appellants challenge the trial court's denial of their TCPA motion (issues one and two), its failure to exclude evidence (issue three), and its order stating that CAR "may be entitled" to recover its attorney's fees (issue four). Because the trial court correctly denied the TCPA motion and we have no attorney's fees award to review, we affirm.

### Background

CAR is in the leasing business. It finds customers to lease vehicles and equipment, and it works with financial institutions to arrange financing for those leases. Martinez worked for CAR, as did Trimble, who served as CAR's chief operating officer. Faubus, acting as an independent contractor, found potential lessees for CAR. Broome represented CAR in several litigation and business matters. Farhat was a CAR customer who knew Trimble from her previous job with a bank.

2

Farhat established US Global on January 23, 2019. On January 31, 2019, Trimble resigned from CAR. Martinez resigned four days later. Both went to work for US Global, as did Faubus.

In its petition, CAR alleged that in the fall of 2018, Trimble, Martinez, and Faubus began discussing forming their own business to compete with CAR, that they approached Farhat as a possible source of funds, and that Broome "assist[ed] in their plan's implementation" without disclosing to CAR that its associates were planning a competing business or that he had advised them about it. CAR further alleged that Trimble, Martinez, and Faubus began to "poach" CAR's clients while they still worked for CAR and that, both before and after leaving CAR, they had used CAR's confidential information for their new business.

Based on these allegations, CAR asserted claims for breach of fiduciary duty (against Trimble, Martinez, Faubus, and Broome); aiding, abetting, and knowingly participating in breaches of fiduciary duty (against all Appellants); conspiracy (against all Appellants); tortious interference with contracts, prospective contracts, and actual and prospective business relationships (against Trimble, Martinez, Faubus, Farhat, and US Global); conversion and unjust enrichment (against Faubus and US Global); and breach of contract (against Faubus).

Appellants filed a joint TCPA motion to dismiss CAR's claims, contending that those claims were based on, related to, or were in response to their exercise of their rights of free speech and of association. Appellants argued that CAR's claims arose

3

from communications that were made (1) by individuals who joined together to collectively express, promote, pursue, or defend a common interest in developing and maintaining US Global as a successful business and as CAR's competitor and (2) in connection with US Global's providing services in the marketplace, which is a matter of public concern. CAR filed a response asserting that Appellants had failed to show that the TCPA applied. In Appellants' reply, they objected to evidence that CAR had attached to its TCPA response, and they moved to strike certain affidavits.

The trial court heard the TCPA motion on October 7, 2019. On November 6, 2019, the trial court signed an order denying the motion, stating that CAR "is entitled to recover its court costs and reasonable attorney's fees," and ordering CAR to submit evidence of its fees and costs and to request a hearing. [Emphasis added.] On November 25, the trial court signed an amended order, which changed the "is entitled to" language in the November 6 order to "may be entitled." *See* Act of May 24, 2011, 82nd Leg., R.S., ch. 341, H.B. 2973, § 2 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.009(c))[1] (providing that a trial court may award court costs and reasonable attorney's fees to the nonmovant if the court finds that the TCPA motion is frivolous or solely intended to delay). The next day, Appellants filed a notice of appeal from the trial court's order "signed November 6, 2019 and

---

[1]For ease of reference, when citing to a section of the TCPA that has been amended since the filing of this suit, we initially cite the session law of the now-amended section, but subsequent citations will simply cite to the current section number.

amended November 25, 2019" and an objection to the trial court's failure to rule on their evidentiary objections and motion to strike.

## Appellants' Issues

## I.        Application of the TCPA

In their first issue, Appellants argue that the TCPA applies to this case because CAR's claims are based on, related to, or in response to Appellants' exercise of their rights of free speech and of association.  Appellants had the burden to show by a preponderance of the evidence that the TCPA applies.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b).  Appellants disputed most of the facts in CAR's petition.  However, "[t]he basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations," and as such, the plaintiff's petition "is the best and all-sufficient evidence of the nature of the action."  *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (quoting *Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (Tex. [Comm'n App.] 1936)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.006 (providing that the pleadings constitute evidence a trial court must consider in ruling on a TCPA motion); *Gaskamp v. WSP USA, Inc.*, No. 01-18-00079-CV, 2020 WL 826729, at *16 (Tex. App.—Houston [1st Dist.] Feb. 20, 2020, no pet. h.) (op. on reh'g en banc).  We therefore begin our analysis by looking at CAR's pleadings.

## A.  CAR's allegations

CAR pled the following facts.  Trimble and Martinez were CAR employees. Faubus worked for CAR as an independent contractor, but he and CAR "understood and agreed" that he worked exclusively for CAR.  All three of these defendants developed and created "financial data/trade secrets" in the course of their work at CAR, and CAR kept this information—including "potential lease customers, their leasing needs, the sources of possible capital (i.e., the lenders)[,] and all information regarding the entire leasing process"—strictly confidential.

CAR's potential lease customers gave CAR confidential financial information, and to protect this information, CAR requested lenders financing the leases to sign nondisclosure agreements (NDAs).  While the general elements of how to conduct an equipment and vehicle leasing business are not trade secrets, the information CAR kept about the identity of existing and potential lessees, the lenders who were available to fund certain types of leases, and the lenders' exact requirements and financing terms is not known to the general public.  Trimble, Martinez, and Faubus were regularly given access to this confidential information.  CAR had a leasing relationship with Farhat, and as such, Farhat was in a position to see how CAR handled its business and the safeguards that CAR required its employees and agents to use to protect confidential data.

Trimble, Martinez, and Faubus began planning to leave CAR to work for US Global, Farhat's new competing business.  Before they left CAR, however, as a way to

6

get a "running start" for the new business, they began using CAR's customer base and confidential information. They planned to make new leases to CAR's customers and, in some cases, replace CAR's existing leases with new US Global leases that offered lower rates or better terms. Appellants told other CAR employees to stall several in-progress CAR leasing opportunities that Appellants then diverted to US Global. During this time, Faubus, Trimble, and Martinez were actively soliciting business for US Global using relationships and financial data developed by CAR, and Faubus did not disclose to CAR that he was no longer acting exclusively for CAR. Appellants also copied some of CAR's forms for use by US Global.

Broome advised Faubus, Trimble, and Martinez about their proposed relationship with US Global, gave them legal advice supporting a competing bid with a customer CAR was actively negotiating with, and advised them on creating internal "form" leases and other documents. Broome never disclosed to CAR that Broome had advised Appellants on their competing business.

CAR further alleged that Appellants continued to use CAR's confidential information after Trimble, Martinez, and Faubus left CAR. For example, CAR had an NDA with Point Bank, and Appellants used confidential customer data that CAR had disclosed to Point Bank under that NDA. Further, on behalf of US Global, Faubus gave lease documents to a longstanding CAR customer, W.T. Fiberlink, and he used a CAR/W.T. Fiberlink application to apply for funding with a lender. CAR pled that as

7

a result of Appellants' actions as alleged in the petition, CAR lost existing business and potential business opportunities.

## B.    Right of association

We now turn to Appellants' argument that CAR's claims were based on, related to, or in response to their exercise of the right of association.  The applicable version of the TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."  Act of May 24, 2011, 82nd Leg., R.S., ch. 341, H.B. 2973, § 2 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(2)).  The plain meaning of the word "common" in this definition "requires more than two tortfeasors conspiring to act tortiously for their own selfish benefit." *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 588 (Tex. App.—Fort Worth 2019, pet. denied).  Rather, the statute "requir[es] interests common to the public or a group." *Id.* at 575.

Here, CAR alleged that Appellants conspired to and did take its confidential information in order to compete with CAR and that they used that information to poach CAR's existing and potential clients.  They presumably communicated with each other to accomplish these acts,[2] assuming that CAR's allegations are true.

---

[2]Not every act complained of by CAR necessarily involved communications; for example, CAR's petition did not allege any factual details about how Appellants took its confidential information—whether they did so by saving electronic data to a portable hard drive, by transmitting the information to another person, or some other

However, the common interest they joined together to pursue is not an interest that the TCPA protects; the "common interest" here is, allegedly, tortfeasors breaching fiduciary duties and working together for their own personal benefit rather than an interest common to the public or a larger group. *See id.* at 575, 588.

Appellants argue that CAR's allegations implicate two common interests: "the business of US Global, operating as CAR's competitor," and the community's interest in a free and competitive marketplace. They assert that CAR's claims are based on, related to, or in response to "communications about forming US Global, providing services to US Global, or soliciting or providing services of US Global in the broader leasing marketplace in competition with CAR." However, CAR did not assert claims based on the fact that Appellants were competing with it or communicating about competing. Its claims are based on allegations about *how* Appellants competed: by breaching fiduciary duties owed to CAR and by taking or conspiring with others to take its confidential information. The communications alleged by CAR are thus not protected by the TCPA.[3] *See id.*

---

method. However, for purposes of our analysis, we will assume that, aside from the breach of fiduciary duty claim against Broome, each of CAR's claims involved communications.

[3]Appellants essentially argue that CAR's purpose in suing them is nothing more than an attempt to quash competition. However, regardless of CAR's true motivation in suing Appellants, we determine whether the TCPA applies based on CAR's allegations, and the factual basis pled by CAR for its claims is not communications involving Appellants' exercise of rights protected by the TCPA.

In Appellants' reply brief, they attempt to distinguish *Kawcak* by noting that "[c]ases citing *Kawcak* have generally held that [the] TCPA right of association does not apply to communications between tortfeasors that misappropriate confidential business information or implicate confidentiality agreements," but that here, CAR's suing Broome with the other defendants "show[s] that the communications here are different from *Kawcak* or the cases trying to draw a distinction for 'private business' disputes."[4] They contend that "CAR does not allege that Broome had an interest in [US Global] or in [US Global]'s business. The only association alleged involving Broome is that he provided services to [US Global] as its attorney and communicated with [US Global] employee(s) providing legal advice."[5] This argument does not help

---

[4]Appellants also attempt to distinguish *Kawcak* by pointing out that it involved two tortfeasors and that this court stated in that case that "the interests of two conspirators who join together to commit a tort do not cross the threshold of common and thus do not bring the conspirators within the protections of the TCPA." *Kawcak*, 582 S.W.3d at 576. Appellants note that here, the claims against Appellants extend beyond "a set of only two people." However, *Kawcak* did not hold that a group of more than two alleged tortfeasors with a common interest constitutes a group for purposes of making their shared interest a "common interest" under the TCPA; this court specifically stated that in that case we were not required to determine what size group must share an interest before that interest qualifies as a "common interest" under the TCPA. *Id.* We need not decide that question in this case either. We hold merely that under the facts of this case, Appellants' alleged interest in committing torts to further private business interests does not qualify as a "common interest" for purposes of the TCPA.

[5]As we discuss below, we recognize that Texas law generally protects an attorney from liability for his conduct in his representation of a client when sued by someone other than that client. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481, 483 (Tex. 2015). However, the existence of this protection is not determinative of the initial question of whether a claim against the attorney is based on, relates to, or arises

10

Appellants. The common interest that Appellants raised in their TCPA motion—the purpose for which they allegedly joined together—was developing and maintaining US Global as CAR's competitor. CAR's petition contains no facts or claims indicating that Broome shared that same interest or joined them for the purpose of promoting, pursuing, or defending it, and Appellants' TCPA motion does not contend that he did so. Thus, Broome's inclusion does not make *Kawcak* distinguishable; Appellants admit that Broome did not join with the other Appellants to pursue a common interest, and, even if he had, the common interest is one that, under *Kawcak*, is not protected by the TCPA. *See id.* at 575, 588.

## C.   Right of free speech

Appellants further argue under their first issue that CAR's claims are based on, related to, or in response to Appellants' exercise of the right of free speech. The applicable version of the TCPA defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern," and it defines a "matter of public concern" as including "an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." Act of May 24, 2011, 82nd Leg., R.S., ch. 341, H.B. 2973, § 2 (amended 2019) (current

out of the attorney's exercise of the rights protected by the TCPA. Further, our acknowledgment of the existence of this protection is not a comment on whether it could apply to a case in which a client's suit against its former attorney is based not on communications the attorney has with another client but on the failure to disclose a conflict of interest.

11

version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3), (7)). Citing the Texas Supreme Court's opinion in *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, Appellants assert that CAR's claims are based on, related to, or in response to their communications with each other about forming and developing US Global and their communications with other businesses, including any potential customers and lenders in the equipment-leasing marketplace, and that these communications "clearly 'have some relevance to a public audience of potential buyers or sellers' or at least 'could reasonably be characterized as involving public concerns.'" 591 S.W.3d 127, 130, 136. Appellants argue that business associates have a right to communicate amongst themselves about customers and that individuals generally have the right to compete with former employers, *see Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex. App.—Houston [1st Dist.] 2003, no pet.), and they assert that the communications on which CAR's claims are based meet two different parts of the definition of "matter of public concern": relating to economic and community interests (by promoting competition) and relating to a service in the marketplace.

Turning first to CAR's claims against Broome, we conclude that they do not fall within the TCPA's protection of free speech. Appellants argue that "[t]he foundation of [CAR's] complaint against Broome is not based on his advice to CAR, but on his association and provision of legal advice to CAR's competitor, i.e.[,] services provided in the public marketplace to CAR's competitor." CAR's claims against Broome, however, are solely based on his alleged nondisclosure: CAR alleged

12

that Broome had a fiduciary duty to disclose any conflicts of interest and that, in violation of that duty, Broome never told CAR that he was representing the other Appellants "with respect to their efforts to leave CAR, create a company to compete with CAR, take confidential information and customer financial data with them, etc., and [his] decisions to provide them with legal advice in their joint and mutual efforts to compete against CAR, generally." Claims that are based on, related to, or in response to the absence of communication do not fall within the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1) (defining "communication" under the TCPA as the making or submitting of a statement or document); *Ray v. Fikes*, No. 02-19-00232-CV, 2019 WL 6606170, at *3 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.) (stating that the definition of "communication" in the TCPA does not include the failure to communicate, and thus plaintiff's claims against her former attorney for failing to file a claim within the limitations period did not fall within the TCPA).

CAR also included Broome in its conspiracy claims, asserting that he participated in a conspiracy with the other Appellants to breach his fiduciary duty to CAR. Conspiracies generally involve communications among the conspirators. *See Bandin v. Free & Sovereign State of Veracruz de Ignacio de la Llave*, 590 S.W.3d 647, 651 n.9 (Tex. App.—Houston [14th Dist.] 2019, pet. filed). Thus, CAR impliedly alleged that Broome, in conspiring with the other Appellants to breach his fiduciary duty to CAR, communicated *something* to the other Appellants. However, CAR did

13

not describe or reference any communications between Broome and the other Appellants related to or in furtherance of this particular conspiracy, and we therefore cannot say that these communications, whatever they were, were on a matter of public concern. While CAR did plead some specific communications by Broome—it alleged that he provided documents to the other Appellants, and it stated that it "reasonably believes" that Broome advised Appellants that they "were 'entirely free' to do what they wanted in terms of future competition with CAR"—those communications are unrelated to Broome's alleged nondisclosure in breach of his fiduciary duty to CAR or to CAR's claim of a conspiracy to breach Broome's fiduciary duty by not disclosing the other Appellants' actions. We therefore cannot say that CAR based its conspiracy claim against Broome on communications involving a matter of public concern.[6]

---

[6]Our holding that the TCPA does not apply to CAR's claims against Broome is not a comment on the ultimate viability of these claims. Further, while the TCPA does not apply to the claims against Broome here, we do not hold that an attorney may never obtain dismissal of a claim under the TCPA. In order to give attorneys latitude to practice their profession, Texas law provides the affirmative defense of attorney immunity, which generally protects attorneys from liability to nonclients for an attorney's acts and communications in representation of a client. *Cantey Hanger*, 467 S.W.3d at 481, 483. As CAR acknowledged in its response to the TCPA motion, the TCPA does not abrogate any defense, immunity, or privilege under the law. Thus, even if the TCPA applies to a claim against an attorney and the plaintiff makes a prima facie case for the claim, the TCPA would not abrogate the attorney-immunity defense—if, that is, that defense applies under the facts of the case. *See, e.g.*, *Rogers v. Walker*, No. 09-15-00489-CV, 2017 WL 3298228, at *5 (Tex. App.—Beaumont Aug. 3, 2017, pet. denied) (mem. op.) (applying attorney immunity in the context of estate administration and disagreeing with the appellant's argument that the doctrine applies only to an attorney's conduct in the litigation context); *Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-16-00394-CV, 2017 WL 944027, at *4 (Tex. App.—Dallas Mar. 10, 2017, no pet.) (mem. op.) (citing *Cantey Hanger* to reject the argument that attorney

14

As for the claims against the remaining Appellants, two cases guide our analysis. First, in *Creative Oil & Gas*, the Texas Supreme Court construed the TCPA's definition of the phrase "matter of public concern" and held that "the definition confirms that the right of free speech involves communications connected to 'a matter of *public* concern'" and that the phrase does not commonly refer to "purely private matters." 591 S.W.3d at 134. Thus, although the definition includes issues related to economic well-being, that a claim that affects the economic interest of the parties does not by itself make a claim one that related to economic well-being so as to qualify as a matter of public concern under the TCPA. *See id.* at 137. The court concluded that "[a] private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Id.*

---

immunity applies only to attorneys involved in litigation); *Farkas v. Wells Fargo Bank, N.A.*, No. 03-14-00716-CV, 2016 WL 7187476, at *8 (Tex. App.—Austin Dec. 8, 2016, no pet.) (mem. op.); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 408 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (discussing immunity in context of plaintiff's claims against alleged tortfeasor's attorney and holding that the attorney had immunity for "acts taken and communications made to facilitate the rendition of legal services" to the attorney's client when the attorney had no legal privity with the plaintiff and no independent duty to the plaintiff together with the plaintiff's justifiable reliance on the attorney's act or representation); *see also Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 505–06 (5th Cir. 2019) (concluding that the Texas Supreme Court would apply attorney immunity in a non-litigation context); *LJH, Ltd. v. Jaffe*, No. 4:15-CV-00639, 2017 WL 447572, at *2–3 (E.D. Tex. Feb. 2, 2017) (applying attorney immunity to conduct during sale of business). *But see NFTD, LLC v. Haynes & Boone, LLP*, 591 S.W.3d 766, 776 (Tex. App.—Houston [14th Dist.] 2019, pet. filed). To be clear, we make no determination whether the attorney-immunity defense applies here.

Second, the Dallas court of appeals recently applied similar reasoning in analyzing whether the TCPA applied to tort claims. In *Goldberg v. EMR (USA Holdings) Inc.*, the plaintiffs alleged that the defendants had used the plaintiffs' confidential information in e-mails sent by the defendants to purchasers and suppliers. 594 S.W.3d 818, 826 (Tex. App.—Dallas 2020, no pet. h.) (op. on reh'g). The defendants argued that the e-mails were communications on a matter of public concern because they related to a good, product, or service in the marketplace and, because they involved recycling scrap metal, related to health or safety, or environmental, economic, or community well-being. *Id.* at *826–27. Citing *Creative Oil & Gas*, the Dallas court held that while the e-mails were communications made in connection with an issue related to a good, product, or service in the marketplace (scrap metal), the e-mails were not made in connection with a matter of public concern because they were "private communications between private parties about purely private economic matters." *Id.* at 830; *see also Pinghua Lei v. Nat. Polymer Int'l Corp.*, 578 S.W.3d 706, 715 (Tex. App.—Dallas 2019, no pet.) (holding that the defendants' communications about misappropriation of their former employer's confidential information were not related to a matter of public concern). The Dallas court further held that

> [e]ven though Defendants' business of purchasing and selling scrap metal may have many beneficial effects and involve matters of health or safety, and environmental, economic, or community well-being, the communications in this case did not involve those matters. Instead, they concerned Defendants' offers to buy or sell scrap metal. The

16

communications did not discuss the benefits of recycling, nor did the communications seek to promote health or safety, or environmental, economic, or community well-being. Instead, they were private communications regarding private commercial transactions for the purchase and sale of a commodity, scrap metal. Plaintiffs' claims are related to Defendants' use of Plaintiffs' confidential information to make purchases and sales. Plaintiffs' claims are not related to any communications by Defendants concerning the beneficial effects of recycling provided by the scrap-metal industry.

*Goldberg*, 594 S.W.3d at 830.

We agree that communications are not on a matter of public concern if the communications are private communications related to purely private commercial business or transactions and, through those communications, the defendants breach fiduciary duties to the plaintiff or misappropriate the plaintiff's confidential information in order to pursue the business or transaction. Accordingly, we reject Appellants' argument that the alleged communications here were on matters of public concern. Because CAR's claims against Appellants are not based on communications relating to a matter of public concern, we overrule the remainder of Appellants' first issue.[7]

In their second issue, Appellants argue that CAR failed to establish a prima facie case for each essential element of each cause of action. In their third issue, Appellants argue that the trial court abused its discretion by failing to strike affidavits

---

[7]As always at this stage of proceedings, our holding that the TCPA does not apply to the claims at issue is not a comment on the merits of CAR's claims.

from CAR's owner and two CAR employees. Because the TCPA does not apply to CAR's claims, we do not address these issues. *See* Tex. R. App. P. 47.1.

## II. Attorney's fees

In their fourth and final issue, Appellants argue that the trial court erred by ruling that CAR "may be entitled" to recover its attorney's fees because there is no basis to conclude their TCPA motion was frivolous or solely for purposes of delay. The trial court's November 25 amended order stated that CAR *may be* entitled to attorney's fees, and it required CAR to submit evidence of its fees and to set a hearing on the matter. The trial court has not yet determined whether CAR is entitled to reasonable attorney's fees and, if so, what amount to award. Accordingly, we have no attorney's fees award to review, and any holding by this court on that issue would be an improper advisory opinion. *See McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 232 (Tex. 2001). We thus overrule Appellants' fourth issue.

### CAR's Cross-Points

## I. The trial court's jurisdiction

In CAR's first point, it argues that the trial court had no jurisdiction to render its November 25 amended order because, under TCPA Section 27.005, a trial court has only thirty days after the hearing on a TCPA motion to rule on the motion, and because the hearing was held on October 6, 2019, the deadline to rule on the motion was November 6. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005. CAR is correct that the trial court has only thirty days after a hearing on a TCPA motion to decide

whether to dismiss the challenged claims. *See id.* However, the TCPA does not require the trial court to rule on the question of attorney's fees within that time. *See id.* § 27.009. Rather, the TCPA "allows a trial court to sign an order ruling on the merits of a TCPA motion—from which, in the event of a denial, an interlocutory appeal may be taken . . . —and then to resolve the issue of attorney's fees in a separate, later order." *Eureka Holdings Acquisitions, L.P. v. Marshall Apartments, LLC*, No. 03-19-00806-CV, 2020 WL 579572, at *2 (Tex. App.—Austin Feb. 6, 2020, no pet. h.); *see also Leniek v. Evolution Well Servs., LLC*, No. 14-18-00954-CV, 2019 WL 438825, at *2 (Tex. App.—Houston [14th Dist.] Apr. 2, 2019, no pet.) (mem. op.) and *DeAngelis v. Protective Parents Coal.*, 556 S.W.3d 836, 859–60 (Tex. App.—Fort Worth 2018, no pet)). Given that the TCPA does not require a ruling on attorney's fees within thirty days of the TCPA hearing and that the November 6 order was not a final judgment, the trial court had jurisdiction on November 25 to modify its November 6 order as to attorney's fees. *See Bowman v. The Bank of N.Y. Mellon Tr. Co., N.A.*, No. 05-13-01684-CV, 2016 WL 258765, at *4 (Tex. App.—Dallas Jan. 21, 2016, pet. denied) (mem. op.). We overrule CAR's first point.

## II.    This court's jurisdiction

In CAR's second point, it argues that this court has no jurisdiction over this appeal because the appeal was taken only from the trial court's November 25 amended order, an order that CAR asserts was void because it was signed more than thirty days after the TCPA hearing. We have rejected CAR's contention that the

19

November 25 amended order was void; as we have held, the trial court had jurisdiction on November 25 to modify its prior interlocutory attorney's fees order. We therefore overrule CAR's second point.

## Conclusion

Having overruled Appellant's dispositive issue and CAR's cross-points, we affirm the trial court's denial of Appellants' TCPA motion, and we remand this case for further proceedings.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: April 23, 2020

20